## CHERRY v GRACE

Ohio Appeals, 2nd Dist, Franklin Co

No 3020. Decided April 21, 1939

Stanley Stewart, Columbus, and David E. Evans, Columbus, for plaintiff-appellant.

Barton Griffith, Columbus, for defendant-appellee.

### OPINION

By GEIGER, J.

This is an action by the plaintiff-appellant seeking to establish a claim against the defendant-appellee arising out of the death of her husband caused by blood poisoning following the laceration of his hand while working as an employee of the defendant-appellee.

It is asserted in the amended petition that the defendant in 1931 was engaged in the building business and had in his service three or more workmen regularly in his said business under a contract of hire and that plaintiff's husband was so employed; that defendant at the time was not complying with and had not complied with the provisions of the Workmen's Compensation Act by paying into the fund the necessary premiums; that H. L. Cherry, while performing his duties under said contract for hire injured his hand and

694

as a result of such injury died on the 5th of February, 1932. She asserts she is his widow and was supported by him; that she filed a claim with the Industrial Commission which found that the defendant Grace was not amenable to the Workmen's Compensation Act and denied her the right to receive compensation on account of the death of her husband.

A rehearing was had and compensation again denied for the same reason.

The defendant Grace answered, admitting that on the 9th day of November, 1931, he was engaged in the building business to the extent of one building only and that on said date Cherry was in his employ under a contract of hire. Certain other allegations in the petition are admitted and all others denied.

The cause was tried before a jury and at the conclusion of the plaintiff's testimony a motion was interposed for a directed verdict on the ground that no evidence was offered to show that more than two men had been employed.

The Court held that the defendant was not amenable to the statute for the reason that three men were not employed, two being employed and the third, a boy, was simply a volunteer and not an employee. A motion for new trial was made and overruled, and the cause lodged in this Court.

Sec. 1465-73, GC, provides that an employer failing to comply with the law is liable for damages and can not avail himself of the common law defenses.

Sec. 1465-74, GC provides that the employee whose employer has failed to comply with the provisions of the act may, in lieu of proceedings against the employer by civil action, file his application with the Commission.

Sec. 1465-75, GC, makes further provisions for proceedings applicable to such a situation.

In this case the widow of the employee followed the provisions of these latter sections. No question is raised as to the employment of the deceased employee, nor of the fact that he received the injury causing his death while employed by the defendant.

The sole question is whether or not the employer had in his service three or more workmen or operatives regularly in the same business under contract for hire.

Sec. 1465-60, GC furnishes a definition of an employer.

Sec. 1465-61, GC, provides that every person in the service of any person, firm or corporation employing three or more workmen regularly in the same business or in or about the same establishment under any contract for hire, express or implied, oral or written, including minors but not including any person whose employment is but casual and not in the usual course of the occupation of the employer, is an employee.

Every person in the service of any independent contractor who has failed to pay into the state insurance fund the amount fixed by the Commission for his employment shall be considered as the employee of the person who has entered into a contract with such independent contractor, unless such employees elect to regard such independent contractor as the employer.

With this statement of the law we shall briefly examine the bill of exceptions on those points which are of consequence in this case.

The defendant, George Grace, page 19, et seq., testifies that he is a builder and was engaged on the date of the injury on one building, in remodeling a two story brick house and was doing a little wrecking in which process there was carpentry work, and brick work in adding to the front portion of the house four rooms, two down and two up, with a hallway, which addition was brick, stone and concrete, predominatingly brick. The carpenter work was wrecking at the time of the accident. Later, new carpentry work was done. A Mr. Warren James did the brick work, by contract, James being paid by Grace so much for the entire job. James had some helpers.

Grace further testified in effect:

A Mr. Smith and Mr. Cherry, the injured man, did the carpentry work and

the wrecking. No stone or brick work was being done at the time the wrecking was being carried on. Only two people were then employed, Mr. Smith and Mr. Cherry. Mr. Smith employed Mr. Cherry. Grace did not employ him although he paid him; no other than Mr. Cherry and Mr. Smith did any work on the house in connection with the wrecking. "Mr. Smith had his stepson for the privilege of learning and observing, but he was not authorized or paid anything by me", while Mr. Cherry and Mr. Smith were engaged in doing wrecking.

"Q. Was there anybody else that did any work in connection with the wrecking?
A. No authorized person."

Grace did not see the boy do any work. Could not say whether he did or did not. Does not remember that he ever did work. The boy was Mr. Smith's stepson.

Lester Clark stated that he was then twenty-four years old and in November, 1931, he was not employed.

"Q. Did you know Cherry?
A. Yes.
Q. Did you ever work with him?
A. On the same job, yes.
Q. What was that job?
A. Carpenter work.
Q. What was the nature of the work?
A. Apprentice in carpenter work."

The building was being remodeled by Grace. Cherry was working as a carpenter together with Smith.

"Q. Were you working on that job at the time Mr. Cherry quit working there?
A. I guess I was, yes."

Cherry quit on account of the accident. Under cross-examination Clark states he was not employed by Grace or anybody; was there to learn the carpentry trade under his stepfather, who paid him no wages outside his keep and

spending money. He had no agreement to pay him anything. He had no conversation with Mr. Grace but saw him on the job.

"Q. Did you ever talk with him with reference to your connection there?
A. No, only that it was agreeable with him that I would be allowed to work on the job in order to learn the carpentry trade."

Neither Grace nor Clark's stepfather paid him anything. He was there simply to familiarize himself with carpenter work which was what he was actually doing. He was not continuously there prior to the accident, only a few days that he was not otherwise engaged. His stepfather had made no agreement to pay him a set salary, but got him his clothing and gave him spending money whether he worked or not. He was employed on the house three or four days a week which was the first job of any size.

The above is substantially all the evidence touching the employees engaged by Grace on the repair job.

The Court below directed a verdict on the ground that the evidence did not tend to show that Clark was a person in the service of Grace and that consequently there were only two employees working on the wrecking job at the time of the accident. If there were not three or more working at the time of the accident for Mr. Grace he is not amenable to the provisions of the statute.

To summarize: It appears that Mr. Grace was a builder engaged in November, 1931, on one building, 28 East Woodruff Avenue, in remodeling a two-family brick residence into a four-family residence. By the statute every person having in his service three or more workmen regularly in the same business or in or about "the same establishment" under any contract, is an employer. It appears that in addition to the wrecking and carpentry work, there was certain brick and cement work done during the course of the "same business" by other workmen who

laid up the front wall of the changed building, in concrete and brick. It was stated, however, that this work was done by contract, wherein Mr. James was paid so much for the job, he having some helpers. Grace testified:

"Q. And how did you pay him for the brick work on the job?

A. I paid him, I paid his men, advanced him so much each week; if a man worked three days or so, wouldn't need him any more, I would advance him (James) that money to pay him. * * * Paid Mr. James and he paid it to the employees."

James was an independent contractor to do the brick work through his own employees for the pay of whom Mr. Grace furnished the money after the work was done.

Sec. 1465-61, GC provides that every person in the service of any independent contractor or subcontractor who has failed to pay into the insurance fund or done other things provided in §1465-69 "shall be considered as the employee of the person who has entered into a contract, whether written or verbal, with such independent contractor" unless such employees elect to regard such independent contractor as the employer. If under this provision of the statute those who laid up the brick work are to be regarded as the employees of Grace, there were during the course of the wrecking and rebuilding more than three persons in service of Grace in the same business which was that of wrecking and remodeling the house, and included brick and carpentry work. There is no evidence on the question as to whether or not James the employer of the bricklayers has failed to pay into the state insurance fund the amount of the premiums required and only under such condition can his employees be regarded as the employees of Grace. There is no allegation in the petition that James was such a nonpaying independent contractor who had entered into a contract with Grace whose business was the job of wrecking and remodeling the building.

We are inclined to follow the judgment of the court below in holding that under the facts proven in reference to the boy Lester Clark, that he was not one falling within the definition of §1465-61, subdivision 2. He was not employed by Grace, and was not in his service under any contract of hire, express or implied. He was on the premises by sufferance to learn as an apprentice. He was not employed for wages or any other compensation and was not paid, and was not an employee under the statute. Had the bill of exceptions disclosed any evidence from which it might be inferred that James, the employer of the bricklayers, had not complied with the statutory requirements as to the payment of premiums and his employees were therefore employees of Grace in the business of remodeling the house, we would feel compelled to reverse the court below.

We are of the opinion that the enterprise of remodeling the house was one to be considered as a whole and the total number of workmen engaged in that enterprise to be counted in making up the total of three or more employees, if James' employees were employees of Grace under the statute.

In the case of State, ex rel v Christen, 128 Oh St 56, this matter is discussed, and it is there held that workmen are regular employees so long as they are hired to do work in the usual course of the business of the employer, and that, "such scheme or system comprehends the nature of the enterprise, its organization, its personnel requirements and its method of operation. The time for which such employment has continued is not controlling." The contract here was for the wrecking and remodeling of the building and we can not segregate those employed for different portions of the work so as to fail to reach three or more employees engaged on the whole job. But there is no evidence that James was a noncomplying employer, so that his employees would become the employees of Grace.

In the course of our examination we have studied the following cases which may be of interest in further pursuing

this matter: State, ex rel v Derrer, 23 O. N. P. N. S., 519; Schaefer v Iron-Steel Mfg. Co., 32 O, L. R. 66; Wallingsford v Slattery, 51 Oh Ap 225; Sanders v Industrial Commission, 45 Oh Ap 351.

We reach the conclusion that the directed verdict was correct under the decision in **Hamden Lodge Case, 127 Oh St 469.**

Judgment affirmed. Cause remanded.

HORNBECK, PJ, concurs.

BARNES, J., concurs in judgment.